UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE S BLOCK,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 4:16-cv-02381-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT'S MOTION FOR REMAND**<br><br>Re: Dkt. Nos. 17 & 22 |

Plaintiff Nicole S. Block seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings. (Pl.'s Mot., Dkt. No. 17.) In responding to Plaintiff's motion for summary judgment, the Government moved for remand for further proceedings. (Def.'s Mot., Dkt. No. 22.) Thus, the only dispute between the parties is whether the case should be remanded for the payment of benefits or for further proceedings.

Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and GRANTS IN PART AND DENIES IN PART Defendant's motion for remand, and remands the case for an immediate award of benefits.

## I. BACKGROUND

Plaintiff Nicole Block is a 51 year-old homeless woman, who currently resides in the East Bay Area of Northern California. AR 633, 635. She has a Bachelor of Arts from the University of California at San Diego. AR 634. Plaintiff previously worked as a cashier and a typist to pay for college, and after graduation she worked as a legal assistant for various law firms. *Id.* Her most recent job was as a legal assistant at a firm in San Francisco, but she was terminated in 2010 due

to interpersonal issues unrelated to her performance. *Id.* After her termination, however, Plaintiff experienced financial difficulties that resulted in the loss of her home and homelessness. AR 635.

Plaintiff's psychological symptoms worsened after she stopped working in 2010. AR 633-641. After losing the insurance associated with her last job, Plaintiff struggled to obtain regular care, but sporadic care showed that she suffered from psychiatric symptoms. AR 449-451. Dr. Mark Swoiskin, M.D., her primary care treating source psychiatrist between 2009 and 2011, noted that Plaintiff had symptoms of depressed mood, decreased energy, appetite fluctuation, low frustration tolerance, irritability and interpersonal problems, despite her being on medication for her symptoms. AR 446-451. On August 2, 2010, Dr. Swoiskin supported Plaintiff's application for state disability benefits. AR 757. At the time, Dr. Swoiskin believed that Plaintiff might be able to return to work in eight months. *Id.*

Eight months after she initially received state disability, primary care physician Dr. Marilyn Kutzscher M.D. agreed to an extension of her disability for another three months, to June 2011, to allow the claimant additional time to recover from her depression. AR 778-779. Records from Dr. Kutzscher show symptoms, including fatigue, difficulty focusing, and difficulty staying organized. AR 779, 782. Dr. Kutzscher noted that Plaintiff was "having a hard time" and was "unable to get out of bed." *See ids.* Plaintiff stopped receiving disability benefits in August 2011, because her state coverage ended. AR 782. In her final appointment with Dr. Kutzcher, Plaintiff was still suffering symptoms of depression that were further complicated by financial and interpersonal issues. AR 782-785. In her last note, Dr. Kutzscher wrote, "I recommend that she stay off work if possible." AR 784. When Plaintiff attempted to return to regular care in late 2013 at the Marin City Health and Wellness Center, she described many of the same symptoms of depression and anxiety to Dr. Blomquist. AR 473-480. Although she was prescribed medication at this time, she was unable to maintain regular treatment. AR 635.

In February and December of 2014, Plaintiff was seen by two consultative examiners who both agreed that she continued to suffer from very serious emotional and mental health problems. AR 467-470, 633-641. In both appointments, she described paranoid delusions, anger outbursts, sadness, crying, insomnia, feelings of hopelessness and worthlessness, worrying, hypervigilance

2

and suicidal ideation. AR 467, 639-640. Plaintiff also described a recent suicide attempt to both examiners. AR 467, 635. Both examiners believed her to be suffering from psychosis. AR 469, 639. Jennifer Forman, Ph.D assessed moderate impairments in Plaintiff's ability to withstand the stress of an 8-hour workday; adapt to changes, hazards or stressors in the workplace setting and maintain adequate pace or persistence to perform complex tasks. AR 469. She also opined that Plaintiff could only work three to five hours per day even when restricted to low stress simple tasks. *Id.* Lesleigh Franklin, Ph.D's assessment of Plaintiffs functional capacity is more restrictive. *Cf.* AR 469, 641. For instance, although both examiners noted that she exhibited depressed mood, tearfulness and crying during her examinations, Dr. Forman only assessed mild to moderate impairments while Dr. Franklin opined that such psychological symptoms would markedly interfere with her work performance "because if she started having trouble, she would be likely to cause a scene or leave." AR 468-469, 636, 640, 641. Dr. Franklin further opined that, due to her psychological symptoms, Plaintiff would have marked difficulties: following a regular schedule or getting to work on time; getting along and working with others, accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting and dealing with normal work stressors; and completing a normal workday and workweek without interruptions form psychologically based symptoms. AR 640-641.

On November 24, 2013, Plaintiff filed an application for Title II disability benefits, alleging disability beginning on July 27, 2010. AR 213. The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. AR 136, 139.

On August 4, 2014, Plaintiff requested an administrative hearing, which was held on January 8, 2015, with Administrative Law Judge ("ALJ") Richard P. Laverdure presiding. AR 145, 171. A supplemental hearing was held on July 23, 2015. AR 184. On November 4, 2015, the ALJ issued a partially favorable decision with a disability onset date of December 1, 2014. AR 38.

On April 1, 2016, Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision final. AR 1-6. Plaintiff now seeks judicial review of the final decision.

On March 10, 2017, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt.

1 No. 17.) On June 20, 2017, Defendant filed its response to Plaintiff's motion for summary

2 judgment and a motion to remand the case for further administrative proceedings. (Def.'s Mot.,

3 Dkt. No. 22.) Plaintiff filed a reply on September 5, 2017. (Pl.'s Reply, Dkt. No. 27.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis,

4

despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

The ALJ concluded that Plaintiff was not disabled prior to December 1, 2014, but became disabled on that date and has continued to be disabled through the date of the decision, November 4, 2015. AR 38. At step one the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 27, 2010. AR 23. At step two, the ALJ concluded that Plaintiff had the following severe impairments: an affective mood disorder; an anxiety disorder; methamphetamine abuse in self-reported remission in early 2014; a personality disorder; marijuana abuse; degenerative disc disease of the cervical spine; and a history of a seizure disorder. *Id.* At step three, prior to December 1, 2014, the ALJ concluded that Plaintiff's substance abuse resulted in an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 24. Before considering step four, the ALJ determined that Plaintiff, had Plaintiff not been using substances continuously or intermittently, she would have had the residual functional capacity to perform a medium work, as defined in 20 C.F.R. § 404.1567(c), with seizure precautions, such as no climbing ladders, ropes, or scaffolding and no unprotected heights. AR 27. Plaintiff retained the mental abilities and aptitudes necessary to engage in simple, repetitive tasks with no interaction with the public. AR 27-28. At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 35. Lastly, at step five, the ALJ concluded that, prior to December 1, 2014, if Plaintiff had not abused substances, there were jobs that existed in significant numbers in the national economy that she could perform and so she was not disabled for the purpose of the Social Security Act. AR 36.

Plaintiff, however, was disabled from December 1, 2014 through the date of the decision. AR 36-38.

### IV.  DISCUSSION

The parties agree that Plaintiff's case should be remanded. Thus, the Court need only resolve whether remand is appropriate for further proceedings or for the immediate award of benefits from the alleged onset date through November 30, 2014.[1]

Plaintiff appeals the partially favorable decision, and argues that the ALJ erred in: 1) determining the onset date; 2) in evaluating the medical evidence; and 3) in finding that Plaintiff's use of stimulants was material. (Pl.'s Mot. at 1.)

#### A.  The ALJ erred by rejecting the opinions of Plaintiff's treating and examining sources without clear and convincing or specific and legitimate reasons.

The ALJ found that "a preponderance of the evidence does not support a finding of disability prior to December 2014, primarily because of substance abuse but as well because of relatively benign medical findings." AR 29. Plaintiff contends that this assessment is not consistent with the contemporaneous records from this time period. (Pl.'s Mot. at 9.)

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

---

[1] While the Government seeks remand for further proceedings for the entire period, the appeal concerns only the ALJ's determination that Plaintiff was not disabled between July 27, 2010 and November 30, 2014. AR 15. Thus, the Court declines to potentially disrupt Plaintiff's benefits by ordering further proceedings regarding her disability status from December 1, 2014 going forward.

Cir. 2009) (citations omitted).

### i. Treating medical sources

Plaintiff argues that the ALJ erred in weighing the evidence of Plaintiff's treating medical sources. (Pl.'s Mot. at 9-14.) Specifically, Plaintiff claims the ALJ ignored the medical opinions of her treating physicians Drs. Swoiskin, Kutzscher, and Blomquist. *Id.* In the motion to remand, Defendant did not address argument, and instead opted to focus on evidence from 2014. (Def.'s Mot. at 3.) While the Court may grant Plaintiff's motion on the grounds that Defendant did not oppose Plaintiff's motion in this regard, the undersigned will still address the medical opinions below.

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes between the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three categories are as follows: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Id.* at 830. Generally, more weight should be given to the opinion of the treating physician than to the opinion of doctors who do not treat the claimant. *Id.* The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific, legitimate reasons supported by substantial evidence. *Id.*

Generally, the ALJ's failure to provide adequate reasons for rejecting the medical opinions requires that they be accepted as true. *Lester*, 81 F.3d at 834 (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir. 1989)); *Pierce v. Astrue*, 382 F. App'x 618, 619-20 (9th Cir. 2010)(reversed district court order affirming ALJ's decision that provided no explanation for why he rejected an examining physician's findings). A claimant's treating physicians are entitled to special consideration. *Delegans v. Colvin*, 584 F. App'x 328, 331 (9th Cir. 2014) (citing *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007).

Here, the ALJ discounted the opinions of Drs. Swoiskin and Kutzscher on the grounds that state disability does not equate to disability as defined by the Social Security Act, and "the contemporaneous record entirely failed to support a disabling impairment." AR. 29. The ALJ

7

further provides that there was no indication of hospitalization while Plaintiff was being treated by Dr. Swoiskin, even though she was "actively using psychoactive substances during that time." *Id.* Hospitalizations, however, are not required to prove disability, and to believe otherwise is offensive. Moreover, Plaintiff testified that she occasionally used stimulants while in the care of Dr. Swoiskin, but she also testified that she openly discussed this use with her doctor and nothing in the evidence refutes this testimony nor diminishes her credibility as to the veracity of her statements. AR 79. As discussed below, there was never a diagnosis of Drug Addiction and Alcoholism ("DAA") prior to the onset date determined by the ALJ. *See* discussion *infra* Part IV.B. Since Dr. Swoiskin noted Plaintiff's reported substance use in his records, the ALJ had no specific or legitimate reason to discount his opinion due to a lack of diagnosis. *See* AR 29 ("it is impossible to tell whether Dr. Swoiskin even considered substance use in formulating his opinion that the claimant was 'disabled'…"). The lack of diagnosis means that Dr. Swoiskin did not diagnose Plaintiff with DDA.

Similarly, Dr. Kutzscher's treatment notes support a finding that Plaintiff was impaired by major depression. AR 773. Records from office visits show that Plaintiff's symptoms included fatigue, difficulty focusing, and difficulty staying organized. AR 779, 782. Dr. Kutzscher noted that Plaintiff was "having a hard time" and was "unable to get out of bed." *Id.* In short, Dr. Kutzscher's notes indicate a belief that Plaintiff's mental health conditions warranted her disability status, as she supported extensions in March and August of 2011. AR 777, 784.

On October 1, 2013, Plaintiff sought medical care at the Marin City Health and Wellness Center ("MCHW"), and began seeing Carriane Blomquist, D.O. Dr. Blomquist diagnosed Plaintiff with depression and epilepsy, and noted that Plaintiff was alert and oriented. AR 479-480. Plaintiff continued to experience psychiatric symptoms, including anxiety, low stress tolerance, and tearfulness throughout her treatment at MCHW, and Dr. Blomquist prescribed clonazepam and Adderall in addition to the carbamazepine. AR 475-480. These notes pre-dated the February 2014 visit in which a nurse practitioner suspected that Plaintiff's sores could be caused by methamphetamine use. AR 474. The ALJ essentially ignored Dr. Blomquist's diagnosis that Plaintiff had depression, and instead decided that the nurse's suspicion, without other evidence.

8

AR 30. This was improper, and was not a specific and legitimate reason supported by substantial evidence for discounting Dr. Blomquist's medical opinion.

In light of the foregoing, the ALJ did not provide specific and legitimate reasons for discounting the opinions of treating physicians Drs. Swoiskin, Kutzscher, and Blomquist, because contemporaneous medical records support a finding of disability, which requires that their medical opinions be credited as true.

### ii. Examining medical sources

Plaintiff argues that the ALJ implicitly rejected the medical opinion of consultative medical source Dr. Forman by choosing an onset date months after the exam suggested otherwise. (Pl.'s Mot. at 14.) In fact, the ALJ accorded substantial weight to Dr. Forman's opinion that Plaintiff had a psychotic disorder not otherwise specified and a mood disorder not otherwise specified, because Dr. Forman's opinion was supported by her findings on evaluation and is consistent with contemporaneous medical evidence. AR 31.

On February 13, 2014, Dr. Forman performed a consultative psychological evaluation of Plaintiff. AR 467-470. Dr. Forman diagnosed Plaintiff with a psychotic disorder NOS and a mood disorder NOS. AR 469. Dr. Forman ruled out bipolar disorder, ADHD, and delusional disorder-paranoid type. *Id.* Dr. Forman opined that Plaintiff could work only three to five hours per day doing low stress simple tasks. AR 469. Dr. Forman further observed symptoms, including crying, depressed mood, suicidal ideation, and insomnia, all of which are consistent with those Plaintiff had reported to Drs. Swoiskin and Kutzscher, as well as the future reports of Drs. Jeffery Seal and Ted Aames. *See* AR 468. Dr. Forman determined the claimant was impaired in her ability to withstand the stress of an eight hour workday and adapt to changes, hazards or stressors in the workplace setting due to her symptoms. AR 469. While the ALJ was correct in finding that Dr. Forman's findings are consistent with the evidence as a whole in this case, he erred in finding that this evidence leads to the conclusion that Plaintiff was not disabled. *See* AR 30-31. Indeed, Dr. Forman's report, properly given the substantial weight afforded by the ALJ, supports the conclusion that the claimant was disabled as of the date of evaluation, February 13, 2014, which predates the ALJ's chosen onset date of December 1, 2014.

1    In light of the foregoing, the undersigned finds it appropriate to credit the opinions of the
2    treating medical sources as true, and that Plaintiff was disabled as of the date of her consultative
3    evaluation. As a result, the undersigned finds that Plaintiff's impairments were not caused by
4    substance abuse.

### B.     The ALJ erred in finding that Plaintiff's use of stimulants was material.

Plaintiff argues that the ALJ erred in finding that her use of stimulants was material to the disability determination from the alleged onset date through November 30, 2014 ("the relevant time period"). (Pl.'s Mot. at 15.)  A claimant is not eligible for disability benefits if alcohol or drug addiction is a "contributing factor material to" the disability determination. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535 (describing how the agency assesses materiality of drugs and alcohol); Social Security Ruling (SSR) 13-2p. Here, the ALJ provided that Plaintiff's substance use was the primary reason for his choosing a later onset date than the date alleged. AR 29.

SSR 13-2p § (8)(b)(i) requires "objective medical evidence — that is signs, symptoms and laboratory findings—from an acceptable medical source" to support a finding of Drug Addiction and Alcoholism ("DAA").  DAA can be established without physical signs or laboratory findings if there are "clinical findings reported by a psychiatrist, psychologist or other appropriate medical source based on examination of the claimant." *Id.*  Self-reported drug use and other "evidence that shows only that the claimant uses drugs and alcohol does not, in itself, establish the existence of a medically determinable substance use disorder" because "they are not objective medical evidence provided by an acceptable medical source." SSR 13-2p (8)(b)(ii). 13-2p provides that "even when we have objective medical evidence, we must also have evidence that establishes a maladaptive pattern of substance use and the other requirements for the diagnosis of a Substance Use Disorder(s) in the DSM. This evidence must come from an acceptable medical source." *Id.*

Here, Plaintiff was never diagnosed with a substance use disorder by any of her treating physicians during the relevant time period. *See* discussion *supra* Part IV.A.i. Most of the ALJ substance use evidence came from the Plaintiff's notation to treatment providers and her own testimony at the hearing. AR 79, 633-651, 657-666, 677-704.  In emphasizing Plaintiff's substance use, the ALJ consistently noted the absence of any mention of substance use.  For example, in

regards to Dr. Swoiskin, he states that "it is impossible to tell whether Dr. Swoiskin even considered substance abuse." AR 29. Similarly, regarding Dr. Forman, the ALJ provides that "the claimant denied a history of substance abuse." AR 29. The only evidence the ALJ points to during the relevant time period is an unconfirmed suspicion from a nurse practitioner at MCHW in February 2014. AR 30. While the suspicion was recorded, the nurse also noted that Plaintiff was not tested for drug use, there was no diagnosis of a substance use disorder, and this suspicion was not discussed with Plaintiff. AR 474.

Notwithstanding, even if Plaintiff had been using stimulants, no maladaptive pattern of use was observed and no diagnosis of a substance use disorder was given prior to December 1, 2014. *See* SSR 13-2p(8)(b)(ii). A suspicion and claimant testimony alone cannot establish DAA or materiality. SSR 13-2p(8)(b)(ii) (self-reported drug or alcohol use is not sufficient to establish a Substance Use Disorder); AR 34. In the absence of medical evidence and evidence of a maladaptive pattern of use, the ALJ failed to establish that Plaintiff had DDA during the relevant time period.

Plaintiff further argues that the ALJ erred by finding that DDA was material to the disability determination. (Pl.'s Mot. at 16.) The Court agrees. The ALJ relied on Dr. Michael Lace's opinion in support of finding materiality, but the medical records that Dr. Lace relied on were reports written after the relevant time period. AR 674. Indeed, Lesleigh Franklin, Ph.D evaluated Plaintiff on December 5, 2014. AR 633-641. Therein, Dr. Franklin noted that Plaintiff reported that she had used drugs, but noted that Plaintiff "insisted that she was not drug dependent" and last reported using methamphetamine one week ago. AR 634. Dr. Franklin's diagnostic impression is that Plaintiff has moderate amphetamine use disorder, but she opined that the "substance abuse appears to be a byproduct of her mental health problems." AR 639. Similarly, Ted Aames, Ph.D, who first saw Plaintiff on December 23, 2014, also noted that Plaintiff used amphetamines. AR 652.[2] Dr. Aames also opined that Plaintiff's impairments were

---

[2] The Court notes that Dr. Aames's report appears to be erroneously dated "1/26/14" instead of "1/26/15" given that Dr. Aames notes show that he began seeing Plaintiff on December 23, 2014. AR 652. Indeed, the letter from Drs. Seal and Aames's, dated July 23, 2015, confirms that the initial intake appointment occurred on January 14, 2015.

11

not caused by amphetamine use. AR 663. As stated above, however, all of the medical evidence cited was post-December 1, 2014, the period in which the ALJ found Plaintiff to be disabled. Thus, the ALJ erred in his finding of DDA during the period from July 27, 2010 to November 30, 2014, and that DDA was material based on Dr. Lace's medical opinion.

Accordingly, Plaintiff's actual disability onset date was July 27, 2010. The record for the earlier time period is complete, and no further administrative proceedings are required.

## V. CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED, and the Government's motion to remand is GRANTED IN PART AND DENIED IN PART, and this action is REMANDED to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for an immediate award of back benefits for the period of July 27, 2010 through November 30, 2014.

IT IS SO ORDERED.

Dated: September 22, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge